### HARVEY KING v. THE STATE.

No. 1362.   Decided May 22, 1912.

Rehearing denied June 5, 1912.

**1.—Robbery—Sufficiency of the Evidence.**

Where, upon trial of robbery, the evidence sustained the conviction, there was no error.

**2.—Same—Continuance—Want of Diligence—Impeaching Testimony.**

Where, upon trial for robbery, the application for continuance did not show whether the witness who had been previously subpoenaed was in attendance upon the court or not, and did not show that any other subpoena or attachment was issued for said witness, there was no error in overruling this motion; besides, the absent testimony was immaterial and at most could only be used for impeaching purposes.        ₒ

**3.—Same—Charge of Court—Impeachment—Complaint.**

Where the testimony could only be used for impeachment it was unnecessary for the court to charge thereon; besides, the mere filing of a complaint against a witness could not even be used against him for impeachment.

**4.—Same—Evidence—Impeachment.**

Where there was no attempt by the State to impeach defendant's witness, there was no error in excluding testimony as to what said witness said.

**5.—Same—Argument of Counsel—Discretion of Court.**

Under the statute and the uniform construction thereof, the time allowed by the trial judge for argument of counsel will not be revised unless injury is shown; and the court is given large discretion in such matters; and there was no reversible error in confining the argument of counsel to two hours on each side.

Appeal from the District Court of Guadalupe.   Tried below before the Hon. M. Kennon.

Appeal from a conviction of robbery; penalty, eighteen years in the penitentiary.

The State's testimony showed that the chief prosecuting witness, Vollmar, after selling his cotton in the town of Seguin on the evening of September 3, 1910, started home in his wagon drawn by two mules, and having the money he received for his cotton in his purse in his

pocket, but when he got to the outskirts of town he was hailed by the defendant and his companion who asked him if they could ride in his wagon to a certain place, and that the witness told them to get in; that witness drove on in a brisk trot, and after getting out of town a piece he was hit over the head and knocked senseless by the defendant, his companion sitting by; that witness could not tell any thing more about what happened after the first blow, and the next he knew was when he arrived at his gate and his mules stopped, that he felt for his money and it was gone, which consisted of five and twenty dollar bills and some silver.

The wife of the State's witness testified that when her husband came home that evening he was sitting with his feet hanging out of the back of the wagon, all covered with blood; that he had a hole in the back of his head and that she helped him in the house; that he was groaning and complaining, etc., and that this was early in the night. Much testimony of this kind was introduced by the State, corroborating the testimony of the State's chief witness.

Defendant pleaded an alibi and want of identification and introduced testimony to sustain it.

*Seidemann & Short,* for appellant.—On question of court's refusal to grant continuance: Butts v. State, 33 S. W. Rep., 866.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Appellant was indicted, tried and convicted for robbery and his penalty fixed at eighteen years in the penitentiary.

This trial was had on April 28, 1911. It seems a previous trial of the case was had at the prior term of court.

Appellant's main contention is that the evidence is insufficient to sustain the conviction. The statement of facts contains more than a hundred typewritten pages. We have carefully gone over and considered the statement of facts in view of appellant's contention. It would serve no useful purpose and is unnecessary to give the testimony. The evidence is clearly sufficient to sustain the verdict.

Appellant contends that the court erred in overruling his second application for a continuance on account of the absence of A. W. Templeton. The record does not show what was the ground of the first continuance, or application therefor. The application shows that a subpoena was issued for the witness on December 29, 1910, and was executed by service on January 28, 1911. The court at which the trial was had convened April 17, 1911, and adjourned May 6, 1911. The application does not show whether or not the witness was in attendance on the court at the convening thereof. It does not show when this cause was called and set down for the day on which it was tried; it does show that the subpoena was returnable on April 24,

1909; it does not show that any other subpoena or attachment was issued for said witness. We think that sufficient diligence is not shown to secure the attendance of the witness. Mixon v. State, 36 Texas Crim. Rep., 66; Skipworth v. State, 8 Texas Crim. App., 135.

Even if the diligence was sufficient the court did not err in overruling the application. Appellant made this one of the grounds of his motion for new trial. The State contested this. The appellant, on the trial, sought to show that when the prosecuting witness Vollmar was assaulted and robbed it was too dark and too late for him to have recognized and identified the appellant as the robber, and claimed that the absent witness would testify that he saw Vollmar going from town to his home about or after dark and that he recognized him only by the electric lights then burning. The court heard evidence on this contest and the State produced the affidavit of the witness which showed that while he saw some party going out of town the night Volmar was assaulted and robbed, he could not and did not recognize such person as Volmar. The court heard all the testimony on this point and overruled the motion for new trial. Under the circumstances, we think it clear that the court correctly overruled the motion. Again, the only other testimony of said witness which appellant claimed he could show, was that on the next morning after the robbery he saw Volmar, and at that time Volmar gave him a description of the robber and claimed that he knew the negro who did rob him and had seen him repeatedly, though he did not know his name, and that on this trial his testimony was different on that point, showing that he had not seen the appellant before but positively identified him on this trial as the party who assaulted and robbed him. At most, this testimony could have been used for impeaching purposes only and it is the settled law of this State that a continuance will not be granted to procure witnesses for that purpose. Garrett v. State, 37 Texas Crim. Rep., 198; Rogers v. State, 36 Texas Crim. Rep., 563; Butts v. State, 35 Texas Crim. Rep., 364; Franklin v. State, 34 Texas Crim. Rep., 203. It is needless to cite other cases.

The court did not err as complained by appellant in not giving a charge to the effect that because appellant's witness Ernest Roberts testified on cross-examination that he was the same man that a complaint was filed against charging him, in connection with appellant, with this offense. This question and answer of the witness appears to have been asked of this witness only for the purpose of identifying him. The fact that merely a complaint was filed against him and no indictment was found, could not even be used against him for impeachment. Wright v. State, 63 Texas Crim. Rep., 429, 140 S. W. Rep., 1108. Even if it could be used to impeach him it could have been used for no other purpose and hence it was unnecessary to charge on the subject at all. Brown v. State, 24 Texas Crim. App.,

170; Robinson v. State, 63 S. W., 870; Newman v. State, 70 S. W., 953; Watson v. State, 52 Texas Crim. Rep., 90; Waters v. State, 54 Texas Crim., 327; Thompson v. State, 55 Texas Crim. Rep., 120. A great many other cases to the same effect might be cited, but we deem it unnecessary.

Appellant's bill of exceptions No. 2 shows that he called as a witness one Wm. Beicker and asked him this question: "State whether or not you heard Ernest Roberts' make a statement to Mr. Woods with reference to how he and Harvey King got to the depot that day, and if so, what was his statement?" The State's attorney objected to this. The bill then shows he would have answered, if permitted, that he heard said Roberts make a statement to Mr. Woods, the county attorney, the same as the statement made by said Roberts while testifying as a witness in this cause. The court sustained the objection and excluded the testimony. In allowing the bill the court states that there was no attempt by the State to impeach the witness Ernest Roberts. That being the case the evidence was hearsay and clearly inadmissible. Besides, the bill does not disclose enough, in any event, to show that the evidence was admissible for any purpose.

Appellant's bill No. 3, leaving off the usual heading and conclusion, says: "After the State and defendant had rested, the court announced to the attorneys representing the State and the defendant that he would limit the argument to two hours a side; that when the court made said announcement, Adolph Seidemann, one of the attorneys representing the defendant, and a member of the firm of Seidemann and Short, told the court that he did not consider that sufficient time and asked the court to grant them more time than that. That the court answered that he considered two hours sufficient time on each side to argue the case. That Adolph Seidemann then and there in open court excepted to the action of the court in limiting the defendant's attorney's argument to two hours."

Under the statute and the uniform construction thereof by this court, the time allowed by the judge for argument will not be revised, unless injury is shown; and the court is given great discretion in such matters. This bill does not show any injury or abuse of discretion by the court in limiting the argument to two hours; nor does the bill show that even that time was taken, nor in any way that additional time was necessary or in any way demanded when the two hours expired.

There being no reversible error, the judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 5, 1912.—Reporter.]