## J. B. Hart v. The State.

No. 20977.  Delivered April 24, 1940.
Rehearing Denied June 28, 1940.

The opinion states the case.

*L. V. Abernathy,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of a cow. The punishment assessed is confinement in the State penitentiary for a term of two years.

The State's testimony, briefly stated, shows that in the early part of the year 1938, J. M. Dillingham owned a cream colored Jersey cow bearing an "H" brand on the left thigh.

About the first day of April of said year, he had the cow placed in the pasture of the Rio Bravo Oil Company, where she remained for a while, but in the course of a few months she, in some manner, got into what is known as the Texas pasture. Fred Cox, who lived on or near the Texas pasture, saw the cow and recognized her as an estray. He informed appellant of an estray cow being in there. Appellant came out, inspected the cow and told Cox that about two years ago he had lost two or three cows which were branded "H" on the left hip and this cow, the one in question, was one of those he had lost. Appellant sold the cow to Cox, who later sold her to Mr. Miller of Electra. When appellant sold the cow to Cox, he gave Cox a bill of sale and Cox paid for the cow by giving a check payable to the appellant. Both instruments were introduced in evidence.

Appellant did not testify or offer any testimony raising an affirmative defense. He filed a plea for the suspension of sentence in case of a conviction and proved a good reputation as a law-abiding citizen by a number of witnesses.

By Bill of Exception No. 1 appellant complains of the manner of selecting a jury. The bill shows that 65 men were drawn for jury service for the different courts, seven of whom resided at Electra. That out of the 65 men, 36 were summoned as prospective jurors in this case but none of them were from Electra. That five of the said 36 were disqualified, leaving only 31 prospective jurors. Thereupon, appellant moved to quash the jury panel on the ground that he was deprived of his constitutional right to have a jury of fair men equally distributed throughout the county; that he be tendered a full panel as provided by the Constitution and laws of Texas before beginning the selection of a jury. This the court declined. We think that a mere reference to Sec. 10 of Art. 2116b and Articles 2140 and 2150 of Vernon's Ann. Civ. St. is a sufficient answer to appellant's contention.

Bill No. 2 complains because the District Attorney inquired of the witness, Dillingham, when the cattle were placed on the Rio Bravo Lease, whether the farm boss was responsible for them, to which the witness replied, "No, sir, I don't think so." Appellant's objection thereto was that it was hearsay, immaterial, irrevelant and prejudicial. We are unable to perceive how the answer prejudicially affected any of the appellant's legal rights in view of the answer by the witness.

Bill No. 3 is without merit. The bill of sale transferring

the title to the cow to Cox was admissible in evidence as a circumstance showing the sale of the cow by appellant to Cox.

Bill No. 4 complains of the introduction in evidence of the check which Cox gave to the appellant in payment for the cow. This was also admissible for the same reason stated in our disposition of Bill No. 3.

Bill No. 5 reflects the following occurrence: After Pat Simmons, a bank official, had given testimony as an expert on handwriting, the witness Parish was called and testified as follows: "The last time we had a handwriting expert from the State Department of Safety here I was talking to him and he told me that the department was going to discontinue the handwriting expert."

Appellant objected to said testimony on the ground that it was hearsay, irrelevant, immaterial and highly prejudicial. The objection was overruled and appellant excepted. The court qualified the bill and in his qualification stated that the witness Parish, who had preceded the witness Simmons, upon being cross-examined by Mr. Abernathy, appellant's attorney, was asked the following question: "Well, you know, as a matter of fact they do; they have men down there on straight time who are experts in handwriting, ballistics and other technical subjects?" To which the witness replied: "Yes, sir. I have heard that and I heard this cut was going to take away the handwriting department. I don't know whether it has or not, but I was informed of that."

It is apparent from the court's qualification of the bill, to which no exception was taken, that appellant was rather persistent in ascertaining why the State did not get a handwriting expert from the Department of Public Safety. He first entered upon an inquiry of the subject and elicited in substance and effect the same testimony as that to which he objected and of which he now here complains. This court has repeatedly held when testimony is introduced without objection, which is in effect similar to that objected to, no reversible error is shown. See Sparkman v. State, 82 S. W. 972, and authorities there cited.

Bill of Exception No. 6 shows that after the witness Allen had testified to appellant's good reputation as a law-abiding citizen in support of his plea for a suspension of sentence, he was asked on cross-examination if he had not heard that he, appellant, went out in a supply house out in K. M. A. and

saw some people shooting dice and told them that if they didn't pay him $2.00 a piece to apply on a radio that he was buying he was going to run them in and fine them for gambling. To which the witness replied, "Yes, sir, I have heard that." Whereupon appellant in due time objected. While specific acts of misconduct are not admissible to prove the general reputation of the accused on trial, however, where he has filed a plea for a suspension of sentence and introduced witnesses who testified to his general good reputation as a law-abiding citizen, the State may, on cross-examination of said witnesses, inquire of them if they had not heard of specific acts of misconduct on the part of the accused for the purpose of testing the sincerity of their testimony and the weight to be given thereto. See East v. State, 107 Tex. Cr. R. 460; Turner v. State, 109 Tex. Cr. R. 301; Jones v. State, 110 Tex. Cr. R. 190.

Bill of Exception No. 7 shows that appellant offered Mrs. Hart, his wife, as a witness and offered to prove by her that he, the accused, during all of their married life had been kind and affectionate, etc. We fail to see how this testimony was relevant on the issue of theft or his plea for a suspension of sentence.

By Bill of Exception No. 8 appellant complains of the court's action in declining to submit his special requested instruction on the law of accomplice. The bill reflects that appellant requested the court to submit to the jury the question of whether Fred Cox, the person who purchased the cow in question from appellant, was an accomplice. If there had been any evidence from which the jury might have reached the conclusion that Cox was an accomplice, then his contention would have been well founded, but we fail to find any evidence in the record which authorized or required such an instruction.

We have carefully considered all matters complained of in Bills of Exception Nos. 9, 10 and 11 and have reached the conclusion that not any of them reflect reversible error. A separate and extended discussion thereof would only lengthen this opinion and serve no useful purpose.

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant insists that the evidence exhibits a variance in that it is alleged in the indictment that the stolen animal was taken from the possession of its owner Dillingham, whereas it is claimed that the evidence shows it was taken from Fred Cox. Appellant cites us to Tinney v. State, 5 S. W. 831, and Williams v. State, 51 S. W. 904, as supporting his contention. We think the facts are such that the cases mentioned are not controlling. Dillingham had placed his cow in a pasture controlled by the Rio Bravo Oil Co. She had gotten out of that pasture and into another one where Cox was employed as an oil field worker. He recognized the cow as an estray and made inquiry of appellant as to whether he knew the owner, describing the cow to appellant, who told Cox he thought the cow belonged to him (appellant) and that he would come look at her. Cox placed the cow in his lot in order that appellant might see her. When appellant saw the cow he claimed her as belonging to him and sold her to Cox. The latter made no claim to the cow until after the purchase from appellant. Prior to that time Cox was exercising no such control or management of the animal as would constitute him the special owner. On the other hand, he recognized her as an estray belonging to some party unknown to him. Under the facts we are of opinion Dillingham was in constructive possession of the animal, and that the sale to Cox by appellant was a taking from Dillingham's possession.

The motion for rehearing is overruled.